Brown and another, Appellants, vs. Marty, Respondent.

*February 11—March 14, 1922.*

*Brokers: Commission dependent on payment of purchase price: Evidence: Sufficiency: Voluntary abandonment of sale.*

1. A special verdict finding that plaintiffs were not entitled to a commission for selling defendant's land unless the purchaser should make a deferred payment thereon is not sustained by evidence which at most showed that plaintiffs agreed to wait until the date of such payment for their commission.

2. Even though the brokers' right to a commission depended on the purchaser meeting a deferred payment for the land, they can recover their commission where the evidence showed that at the time the payment was due the purchaser had sufficient money in the bank to meet it, but that the contract of sale had been rescinded by the voluntary agreement between the vendor and purchaser.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to recover a commission of $460 claimed to have been earned on the sale of defendant's farm. The contract for commission was in writing, and it is admitted that plaintiffs on September 11, 1911, secured a purchaser, Olson, ready, able, and willing to buy on the terms stated in the contract except that he could pay down only $500 in cash instead of $2,000. Defendant accepted the terms and a land contract with Olson for the purchase of the farm was entered into, and $500 cash was paid and a further cash payment of $2,000 was to be made January 1, 1920.

Defendant claims that at the time Olson secured the land contract plaintiffs, through *Brown*, agreed that no commission should be paid unless Olson paid the $2,000 on January 1, 1920. Plaintiffs denied this. On December 18, 1919, Olson assigned to defendant the land contract entered into September 11, 1911, and defendant afterwards sold his farm to another party.

The jury found that "on the day that Mr. Olson and *Mr. Marty* signed the contract dated September 11, 1919, *Mr. Brown* stated that the plaintiffs were not entitled to receive a commission unless $2,000 was paid by Mr. Olson on the purchase price."

The court entered a judgment dismissing the action, and the plaintiffs appealed.

For the appellants there was a brief by *Hill, Spohn & Thomann* of Madison, and oral argument by *W. H. Spohn.*

For the respondent there was a brief by *Gettle & Torge* of Madison, and oral argument by *A. T. Torge.*

Vinje, C. J. The judgment must be reversed for two reasons: First, because the evidence does not sustain the verdict, and second, even if it did, plaintiffs would be entitled to recover.

The only competent evidence on behalf of the defendant to sustain the verdict is the testimony of his son, Matt Marty, and that of his married daughter, Rose Brink. Matt testified:

"The conversation between me and *Brown* in my father's presence relative to commission was when the papers were signed and he handed over the $500. *Mr. Brown* I remember of asking him whether he wanted his commission, expected his commission now or January 1st, when the deal was to be closed up, and he says: 'Yes, sir, any time will do.' I don't remember whether anything was said about the $2,000 payment when I was there. They most likely had that all made out before I got there; not that I remember of, no."

Rose Brink testified:

"I am a daughter of *Leonard Marty.* My husband's name is David Brink. I was present when Mr. Olson and my father and mother and Matt were there at the farm, but I heard not much of the deal. In regard to the payment of a commission, I heard mother say something to father, I didn't hear what she said, and my father says to *Mr. Brown:* 'I don't pay you until the first of March when the final papers—first of January when the papers are made out and the $2,000 paid down.' *Mr. Brown* answered, 'No, no.'"

This evidence fails entirely to establish the fact that no commission was to be paid unless the $2,000 was paid January 1st. At best it only establishes the fact that plaintiffs agreed to wait for their commission until January 1st, when all the parties expected the $2,000 would be paid, and when it would have been paid but for the voluntary cancellation

of the land contract, for which cancellation plaintiffs were in nowise responsible. The evidence showed that Mr. Olson was a man of good financial standing and that he had on deposit in his bank more than $2,000 on January 1st, subject to check.

So even if plaintiffs agreed that no commission should be paid unless Olson paid the $2,000 January 1st, such agreement would at best only guarantee the ability of Olson to pay it when due. It would not mean that the defendant, by voluntarily abandoning the contract, could escape the payment of a commission. *Dean v. Wendeberg,* 175 Wis. 513, 185 N. W. 514. It was shown that Olson had and could have paid the money. It will therefore be assumed that the defendant, for reasons of his own, chose to cancel the bargain. This he could not do without paying the commission even if the agreement was as found by the jury. Such agreement contemplated defendant's readiness to carry out his contract and that the commission failed only in case the purchaser was unable to carry out his part. No such failure is shown.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiffs for $460 and costs.